## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**KELLY ANN M.,**[1]

    Plaintiff,       Civ. No. 1:22-cv-00434-AA

  v.            **OPINION & ORDER**

**COMMISSIONER OF SOCIAL
SECURITY**,

    Defendant.

_____

AIKEN, District Judge:

  Plaintiff Kelly Ann M. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

  On June 26, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning on April 10, 2018.  Tr. 15.  The applications were denied initially and upon reconsideration and, at Plaintiff's request, a telephonic hearing was held before an Administrative Law Judge ("ALJ")

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

on February 3, 2021.  *Id.*  On February 24, 2021, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 29.  On January 19, 2022, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner

fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 10, 2018. Tr. 17. The ALJ found that Plaintiff met the insured requirements of the Social Security Act through June 30, 2023. *Id.*

At step two, the ALJ found that Plaintiff had the following severe impairments: thyroid disorder; pituitary disorder; degenerative disc disease; "low vision (loss of sight in one eye)"; and neuropathy. Tr. 17. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance and stoop; she can occasionally kneel, crouch, and crawl; she can occasionally reach overhead bilaterally; she can "perform activities consistent with monocular vision only (i.e., not judging depth, distance, moving objects, etc.)"; she can tolerate occasional exposure to extreme heat, cold, and pulmonary irritants; and she

can tolerate no exposure to workplace hazards such as unprotected heights and exposed moving machinery.  Tr. 20.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as an administrative clerk.  Tr. 27.  In the alternative, the ALJ found at step five that Plaintiff was capable of performing work that exists in significant numbers in the economy as a marker, a laboratory sample carrier, and a router.  Tr. 28-29.  As a result, the ALJ found that Plaintiff was not disabled.  Tr. 29.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.

2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting lay witness testimony; (3) improperly discounting medical opinion evidence; and (4) including jobs that require depth perception at steps four and five of the sequential analysis. Plaintiff alleges that these errors infected the ALJ's formulation of the RFC and the vocational expert ("VE") hypothetical.

### I.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of symptoms. *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff had a brain tumor that was removed when she was a child. Tr. 45. Plaintiff testified that she has issues with her eyesight, which require her to make adjustments to graphics and settings to use a computer. Tr. 53. Plaintiff testified that she lacks depth perception and cannot see in darkness. Tr. 68-69.

Plaintiff has back and neck pain, which make it difficulty for her to move around, answer the phone, type, or use the computer. Tr. 53. Plaintiff testified that her back and neck pain limit her to using the computer for two to three hours at a time. *Id.* Plaintiff estimated that she could sit for three hours before needing to change positions. Tr. 56. Plaintiff believed that she could stand for an hour at the longest and could walk between six and eight blocks before her back pain became severe. Tr. 56-57. Plaintiff has "5% mobility" in her neck and that her "neck is situated so that I'm always looking down and, due to my eyesight, I have a very minimal field of vision." Tr. 53-54. Plaintiff testified that she is unable to lift anything over her head. Tr. 46. Plaintiff can only reach overheard with one arm. Tr.

53.  Plaintiff also testified that she had problems with her hands, particularly her right hand, which she attributed to carpal tunnel syndrome.  *Id.*

Plaintiff testified that her neck and back are painful and that she treats them with multiple doses of Tylenol every day.  Tr. 55-56.  Plaintiff testified that she has "an intolerance for some medication" and that she does not take any medication for pain other than Tylenol.  Tr. 57.  Plaintiff has ankylosing spondylitis in her neck, down to her pelvis and lower back, as well as sciatica, which make walking painful and are exacerbated by stress.  Tr. 55-56.

Plaintiff testified that she suffers from sinus issues, headaches, sore throats, and earaches.  Tr. 53.  Plaintiff's sinus issues date back to a surgery in 2009.  Tr. 57-58.

Plaintiff testified that she lives with her parents and is unable to live independently.  Tr. 46.  She has difficulty seeing and is unable to do grocery shopping without assistance from her parents.  *Id.*  Plaintiff testified that she is unable to drive and has not held a drivers' license since she was twenty-eight years old.  Tr. 46-47.  She previously relied on public transportation but more recently has had difficulty to make her way to the bus stop and so relies on family members for transportation.  Tr. 47-48.

The ALJ found that Plaintiff's "allegations as to the intensity of symptoms are only partially consistent with the record."  Tr. 21.  In considering Plaintiff's testimony, the ALJ assessed the objective medical evidence, noting that Plaintiff's alleged limitations in lifting were "inconsistent with most of the opinions in the

record." Tr. 27. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, a conflict between a claimant's testimony and the objective medical evidence is a proper basis for discounting subjective symptom testimony. *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999).

Here, Plaintiff asserted that she was limited to lifting "up to 5-10 lbs due to frozen left shoulder." Tr. 394. Examining physician Dr. Mike Henderson did not assess any lifting restrictions related to Plaintiff's impairments. Tr. 1453-54. Plaintiff's chiropractor, Dr. William Harlan, opined that Plaintiff could occasionally lift twenty pounds. Tr. 1394. The reviewing physicians similarly found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally. Tr. 85, 125. On this record, the Court concludes that the ALJ reasonably considered the inconsistency between Plaintiff's testimony and the medical opinion evidence.

The ALJ also considered the objective medical evidence. Tr. 22. Imaging of Plaintiff's spine in 2018 showed "moderately severe cervical spondylosis," while imaging in 2019 showed "mild diffuse spondylosis." Tr. 1174, 1465-66. Examinations showed limited range of motion in Plaintiff's neck. Tr. 1538 (December 2018, showing "Neck rigidity present. Decreased range of motion present."); 1591 (June 2018, showing same); 1603 (December 2018, showing same); 2169 (April 2020, showing "She has limited range of motion in the neck, degenerative changes, no acute inflammation."); 2178 (September 2020, showing "Decreased range of motion" in

Plaintiff's neck).  The ALJ incorporated this evidence into the RFC, noting "[t]hese limitations were considered in limiting the claimant's exertional activity, postural activities, and exposure to hazards, particularly given the very limited range of motion in the claimant's neck." Tr. 22.  On this record, the Court concludes that the ALJ reasonably considered the objective medical evidence in assessing Plaintiff's testimony and formulating the RFC.

The ALJ also considered evidence that Plaintiff's impairments had improved with treatment.  Tr. 22 (finding "no further limitations are warranted due to consistent stability with treatment,").  "Starting in March 20178 through the present, the claimant is generally described as doing well or very well, in fair health, getting along fairly well, or feeling well/fine and her conditions are generally described as stable; she was denying any major medical concerns by early 2020." Tr. 22.  This is supported by the record.  Tr. 1751 (March 2018, Plaintiff "is doing okay" and "[h]er job has been going very well."); 1892 (July 2018, Plaintiff "is doing well."); 1958 (August 2020, Plaintiff "is doing well."); 1973 (October 2020, Plaintiff "is doing fine today."); 2156 (February 2020, Plaintiff's conditions "stable,"); 2160 (March 2020, Plaintiff "states that she is doing well in terms of her lower extremity edema and that she is [sic] found a pair of retail compression socks which seem to be sufficient in terms of managing edema in her legs," and Plaintiff "denies major medical concerns at this time."); 2171 (July 2020, Plaintiff "has been getting along fairly well,"); 2175 (September 2020, Plaintiff "is feeling well.").  This is not, as Plaintiff suggests, an instance where the ALJ cherry-picked isolated periods of improved function.

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). The Court concludes that the ALJ reasonably considered evidence that Plaintiff's conditions were appropriately managed and improved with treatment.

The ALJ also considered Plaintiff's history of working despite her long-standing impairments. More specifically, the ALJ noted that Plaintiff's testimony was that her biggest barriers to employment were her visual impairment and her neck pain. Tr. 27. The ALJ observed that many of Plaintiff's "alleged limitations have been ongoing since at least 2009 (or before), yet the claimant was able to successfully work since then." *Id.* Plaintiff's mother provided a statement in March 2020 in which she stated that Plaintiff's "inability to more her neck and back" had "started at least 20 years ago." Tr. 443. Plaintiff's eye condition dates back to brain surgery in 1984 and Plaintiff had additional sinus surgery in 2009. Tr. 21, 452. In *Ahearn v. Saul*, 988 F.3d 1111 (9th Cir. 2021), the Ninth Circuit considered a similar situation in which the plaintiff had long-standing issues with "cognition, speed, depression, breathing, and sleeping," but that he had been gainfully employed for long periods. *Id.* at 1117. The Ninth Circuit found the plaintiff's work history with the long-standing impairments supported the ALJ's non-disability findings. *Id.* Consistent with *Ahearn*, the Court concludes that the ALJ reasonably considered Plaintiff's history of working despite her long-standing impairments.

The ALJ also considered the conservative treatment for Plaintiff's pain, noting that Plaintiff testified that she did not take any prescription pain medication. Tr. 27.

As noted, Plaintiff testified that relies on Tylenol to manage her pain. "Evidence of 'conservative' treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (internal quotation marks and citation omitted, alterations normalized). Here, Plaintiff asserts that the ALJ erred by failing to consider her testimony that "she has had poor reactions to pain medications in the past and that this is why she does not take anything stronger for her pain." Pl. Reply. 5. This overstates Plaintiff's testimony. At the hearing, Plaintiff was asked if she had taken medication for pain other than Tylenol and she testified that she has "an intolerance for some medication, and with all the other medication I do take, I have not ever done that, and I try to keep my Tylenol to a minimum because I know I can damage a kidney and some other things, but no." Tr. 57. Plaintiff did not testify that she cannot take pain medication, but rather testified that she has not ever done so, with the explanation that she has an intolerance for "some medication." On this record, the ALJ reasonably considered Plaintiff's conservative pain management regime.

The ALJ also considered Plaintiff's activities of daily living. Tr. 27. As noted, a claimant's daily activities are a valid consideration in assessing subjective symptom testimony. *Ghanim*, 763 F.3d at 1163. Here, the ALJ noted that Plaintiff "enjoys spending time playing computer games," and "discloses that she spends 8 hour chunks of time performing light tasks that require a certain amount of visual acuity, including preparing meals, using her computer, washing dishes, putting dishes away, applying for jobs online, watching movies, and helping her mother with towels," and

"reports weekly shopping and dusting." Tr. 22-23. The ALJ observed that Plaintiff testified that her visual impairment and neck pain were her primary barriers to employment but "she is able to remain active for 8 hour periods during her day, performing various light chores and using her computer, inconsistent with debilitating neck or visual impairments." Tr. 27. The ALJ also noted that Plaintiff's daily activities were inconsistent with her allegations concerning the use of her hands or her testimony concerning her ability to sit and stand. *Id.*

In Plaintiff's function report, she reported working with her mother to prepare meals, do laundry, and light housekeeping. Tr. 351. Plaintiff's description of her daily activities included considerable use of her computer, shopping, and household chores. Tr. 353. The Court concludes that the ALJ reasonably considered inconsistencies between Plaintiff's alleged limitations and her daily activities and that the ALJ's conclusion on that issue is supported by substantial evidence.

In sum, the Court concludes that the ALJ gave legally sufficient reasons for discounting Plaintiff's subjective symptom testimony and that the ALJ's findings are supported by substantial evidence in the record.

## II.    Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the lay witness evidence presented by Plaintiff's father, Charles M., her mother Cassie M., and Plaintiff's friend Joy Burck. "[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines

to disregard such testimony and gives reasons germane to each witness for doing so."
*Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Charles M. submitted a third-party function report in which he described Plaintiff's impairments. Charles M. reported that Plaintiff's vision is limited to one eye and that she is not able to drive as a result. Tr. 374. She has arthritis in her neck and shoulder, which prevent movement and "also limit her visual acuity." *Id.* Plaintiff has limited movement in her left arm, Raynaud's disease in her hands and feet, as well as neuropathy in her feet. *Id.* He reported that Plaintiff prepared certain foods, but not full meals, with her mother's assistance due to her limited vision. Tr. 376. Plaintiff spends her days reading, using the computer, watching TV, and spending time with her family and church. Tr. 378. She has limitations in lifting, squatting, reaching, walking, kneeling, hearing, seeing, climbing stairs, completing tasks, and using her hands. Tr. 379. She cannot do overhead lifting and is limited to lifting only ten pounds. *Id.* Her balance issues interfere with squatting and climbing stairs, while her shoulder interferes with her ability to reach. *Id.* Her ability to walk is limited by her eyesight and lack of stability. *Id.* She can walk half a mile before needing to stop and rest. *Id.* Stress exacerbates her neck, upper back, and stomach issues, and Plaintiff does not handle changes in routine well. Tr. 380.

Plaintiff's mother also submitted a statement in which she reported that Plaintiff is easily tired. Tr. 443. Plaintiff's inability to move her neck and back started at least twenty years earlier. *Id.* She has limited sight because of blindness in her right eye. *Id.* Plaintiff and her mother work "a lot in the kitchen" but Plaintiff

has trouble getting things out of the upper cupboards because of her neck and arm stiffness. *Id.* Plaintiff "walks with her head bent over because of neck and back pain, and inability to move her neck," which "hinders mobility and limits her sight." *Id.* She has trouble navigating stairs and has fallen due to her lack of depth perception. *Id.* Plaintiff cannot carry anything heavy because of Plaintiff's lower back pain and sciatica pain. *Id.* Plaintiff's shoulder was frozen by a fall and overuse of her arm causes "sudden, shooting pain." Tr. 444. Plaintiff "was diagnosed with Raynaud's disease in both hands," which cause her fingers to change color and hurt. *Id.*

Joy Burck also submitted a statement in support of Plaintiff's claim in which she reported that Plaintiff has "an extreme lack of mobility with her neck and just turning her head." Tr. 445. She suffers "dizziness and hearing loss due to sinus and inner ear problems," and she "lives with pain daily," in her neck, shoulder, back, legs, feet, sinuses, ears, and hands. *Id.* Plaintiff has fallen multiple times over the years due to her lack of sight and depth perception. Tr. 446.

The ALJ expressly considered the lay witness statements and found that they "are not entirely consistent with the record as a whole as to the level of intensity suggested, given [Plaintiff's] overall continued stability (and reports of generally doing well) with treatment." Tr. 27. As previously noted, Plaintiff repeatedly reported doing well to her physicians. Tr. 1751; 1892; 1958; 1973; 2156; 2160; 2171; 2175. On this record, the Court concludes that this satisfies the relatively low burden of providing a germane reason for discounting lay witness evidence. The Court

concludes that the ALJ did not err in discounting the testimony of Plaintiff's parents and her friend Mrs. Burck.

### III.   Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in discounting the medical opinions of Philip Paden, M.D; William Husum, M.D.; and chiropractor Dr. William Harlan.  The Ninth Circuit has clarified that under the new regulations, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787.  Now, an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  "The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are *supportability* and *consistency*."  *Id.* at 791 (emphasis added, internal quotation marks and citations omitted).  For supportability, the regulations provide that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  As for consistency: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

### A. Dr. Paden

On September 12, 2018, Dr. Paden provided a letter in support of Plaintiff's application in which he reported that Plaintiff only had light perception and no peripheral vision in her right eye, with additional visual limitations in her left eye. Tr. 1357. Dr. Paden opined that Plaintiff "cannot judge distances or uneven ground as well as most people." *Id.*

The ALJ found Dr. Paden's opinion partially persuasive, noting that it was supported by objective testing and consistent with other notes documenting significant visual deficits in Plaintiff's right eye. Tr. 24. The ALJ incorporated Dr. Paden's opinion into the finding that Plaintiff was limited to monocular activities. *Id.* However, the ALJ found that the "lack of specified functional limitations" in Dr. Paden's opinion "reduces the overall utility to some degree." *Id.* The ALJ "limited the claimant to monocular only tasks," consistent with the other medical opinions "that offer specific functional limitations to accommodate [Plaintiff's] vision loss." *Id.* The ALJ also noted that "[n]o further limitations are found to be warranted given that the claimant's vision problems do not stop her from cooking, cleaning, or using her computer on a daily basis." *Id.*

Here, the ALJ found that Dr. Paden's opinion concerning the existence of Plaintiff's visual impairment was supported, but that the lack of specified limits reduced the usefulness of the opinion and that assigning greater limitations based on Dr. Paden's opinion would not be consistent with the other medical evidence or with Plaintiff's own daily activities. Dr. Paden's note that Plaintiff "cannot judge distances

or uneven ground as well as most people" is a comparative statement, rather than a concrete limitation. The Ninth Circuit has held that such a failure to specify concrete limits is a valid reason to discount medical opinion evidence. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). On this record, the Court concludes that the ALJ did not err in considering Dr. Paden's opinion.

**B. Dr. Husum**

In April 2020, Dr. Husum prepared a function report for Plaintiff. Tr. 1806-07. Dr. Husum found that Plaintiff could occasionally lift less than ten pounds and frequently lift less than ten pounds. Tr. 1806. When asked how long Plaintiff could stand or walk during an eight-hour day, Dr. Husum checked the boxes for both "less than 2 hours" and "about 6 hours." *Id.* Dr. Husum opined that Plaintiff could sit for less than six hours in an eight-hour day and that she was limited in the use of her upper extremities. *Id.* Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs, balance, stoop, kneel, or crouch. *Id.* Plaintiff could frequently crawl. *Id.* Plaintiff was limited in her ability to reach in all directions, handle, or finger. Tr. 1807. Dr. Husum checked the box that Plaintiff was limited in her depth perception but did not check the other boxes for visual limitations, adding the note that Plaintiff had "total loss vision right eye." *Id.* Plaintiff could have unlimited exposure to wetness or humidity; should avoid concentrated exposure to extreme heat and vibration; and should avoid even moderate exposure to extreme cold. *Id.* Dr. Husum left the sections concerning

fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights blank. *Id.*

The ALJ found that Dr. Husum's opinion was not persuasive, noting that it provided limited support for the assessed limitations in sitting, standing, and walking. Tr. 26. The ALJ also found that Dr. Husum's opinion was "inconsistent with the record as a whole," contrasting it specifically with the opinions of the consultative examiner and the reviewing physicians. *Id.* The ALJ found that Dr. Husum gave contradictory responses on Plaintiff's ability to stand and walk, "indicating some possible confusion with the form," and found that the limitation assessed by Dr. Husum "is inconsistent with almost every other opinion in the record." *Id.* The ALJ found that the limitations assessed in Plaintiff's ability to stoop and balance were inconsistent with Plaintiff's daily activity and internally inconsistent with Dr. Husum's opinion that Plaintiff could frequently crawl. *Id.* "The manipulative limitations are also not persuasive, as objective findings are generally void of findings to suggest manipulative limitations, except for reduced range of motion in [Plaintiff's] neck, which would reasonably restrict [Plaintiff's] ability to reach overhead." *Id.* The limitations restricting exposure to vibration was not found to be warranted in light of Plaintiff's "general stability and well-being with appropriate treatment." *Id.*

With respect to consistency, Dr. Husum's opinion was inconsistent with the other medical opinion evidence. For example, Dr. Harlan found that Plaintiff could occasionally lift twenty pounds, Tr. 1394, while Dr. Henderson found normal muscle

strength.  Tr. 1453.  The reviewing physicians also found that Plaintiff could occasionally lift twenty pounds.  Tr. 85, 125.

With respect to supportability, the ALJ correctly noted that the limitations assessed by Dr. Husum were inconsistent with Plaintiff's report of her daily activities, Tr. 353, and with the medical records showing stability and well-being.  Tr. 1751; 1892; 1958; 1973; 2156; 2160; 2171; 2175.  The ALJ also correctly noted the internal inconsistency in Dr. Husum's function report with respect to Plaintiff's ability to stand and walk.  Tr. 1806.  On this record, the Court concludes that the ALJ properly weighed the opinion of Dr. Husum.

### C. Dr. Harlan

Plaintiff's chiropractor, Dr. Harlan, prepared a function report for Plaintiff in December 2018.  Tr. 1394-95.  He opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds.  Tr. 1394.  Plaintiff could stand or walk for less than two hours in an eight-hour day.  *Id.*  Dr. Harlan did not check a box for how long Plaintiff could sit in an eight-hour day but checked that Plaintiff would need to periodically alternate between sitting and standing.  *Id.*  Plaintiff's ability to push and pull was limited in her lower extremities, with the note that "spinal rigidity decreases mobility in total."  *Id.*  Plaintiff could frequently climb ramps or stairs, but could never climb ladders, ropes, and scaffolds.  *Id.*  Plaintiff could occasionally stoop, kneel, or crouch, but never crawl.  *Id.*  Dr. Harlan left the section on balancing blank. *Id.*

Dr. Harlan opined that Plaintiff was limited in her ability to reach in all direction, handle, and finger, but not limited in her ability to feel. Tr. 1395. Plaintiff was to avoid even moderate exposure to temperature extremes, wetness, humidity, noise, and vibration, and she was to avoid all exposure to fumes, odors, dusts, gases, and hazards such as machinery and heights. *Id.*

The ALJ found that Dr. Harlan's opinion was not persuasive. Tr. 25. The ALJ found that Dr. Harlan's citation to spinal rigidity was supported by chiropractor notes, but that the spinal rigidity would result in the level of impairment found by Dr. Harlan was "inconsistent with the record as a whole." *Id.* The ALJ noted that the limitations assessed were inconsistent with Plaintiff's reports of her daily activities. *Id.* The limitations assessed by Dr. Harlan with respect to handling and fingering "find limited support on examination," in addition to being inconsistent with Plaintiff's daily activities. *Id.* "The limitation on no exposure to pulmonary irritants is outside of the scope of expertise of this provider and thus not persuasive, as are limitations on wetness, noise, and humidity." *Id.* The ALJ found that the limitations assessed in Plaintiff's ability to push and pull with her lower extremities were unsupported because "examination of [Plaintiff's] lower extremity strength, if mentioned at all [are] generally normal particularly in recent records." *Id.*

With respect to supportability, the ALJ correctly noted that the limitations on stooping, reaching, handling, and fingering were inconsistent with Plaintiff's own report of her daily activities. Tr. 353. With respect to consistency, the ALJ correctly noted that the medical records showed normal strength in Plaintiff's legs throughout

the relevant period.  Tr. 1142; 1497; 1501; 1507; 2158; 2163; 2178.  The ALJ reasonably concluded that these inconsistencies undermined Dr. Harlan's opinion.  In addition, the ALJ correctly noted that opinions rendered outside of a medical provider's area of specialty may be less persuasive.  20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4).

On this record, the Court concludes that the ALJ did not err in discounting the opinion of Plaintiff's chiropractor, Dr. Harlan.

### D. Step Four and Five Findings

Plaintiff asserts that the ALJ erred by finding that she could return to her past relevant work as an administrative clerk or, alternatively, could perform work as a laboratory sample carrier, because those positions require depth perception and so are beyond the limits of Plaintiff's RFC.  However, neither the administrative clerk position, nor the laboratory sample carrier position require depth perception. *Dictionary of Occupational Titles*, §§ 291.362-010 Administrative Clerk, *available at* 1991 WL 671953 ("Depth Perception: Not Present—Activity or condition does not exist"); 922.687-054 Laboratory Sample Carrier, *available at* 1991 WL 688131 ("Depth Perception: Not Present—Activity or condition does not exist.").

The Court concludes that the Administrative Clerk at step four and Laboratory Sample Carrier are not beyond Plaintiff's RFC and so the ALJ findings at steps four and five were not erroneous.

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ____16th____ day of November 2023.


 /s/Ann Aiken_____
ANN AIKEN
United States District Judge